WEBER v. PENNSYLVANIA R. CO.

(District Court, E. D. Pennsylvania. March 8, 1920.)

No. 2008.

1. COMMERCE ⬚95—AWARD TO SHIPPER BY INTERSTATE COMMERCE COMMISSION HELD SUPPORTED BY EVIDENCE.

An award by the Interstate Commerce Commission of restitution to the owner of a coal mine against a railroad company for discrimination in the distribution of cars *held* supported by sufficient legal evidence.

2. COMMERCE ⬚97—INSTRUCTIONS IN ACTION FOR DISCRIMINATION AFFIRMED.

Giving and refusing of instructions, in an action against a railroad company to enforce an award of restitution made by the Interstate Commerce Commission for discrimination in distribution of coal cars, reviewed on motion for new trial, and *held* not error.

At Law. Action by Isaac C. Weber, surviving partner of the partnership of W. F. Jacoby and Isaac C. Weber, trading as W. F. Jacoby & Co., against the Pennsylvania Railroad Company. On motion by defendant for new trial. Denied.

See, also, 242 U. S. 89, 37 Sup. Ct. 49, 61 L. Ed. 165.

William A. Glasgow, Jr., of Philadelphia, Pa., for plaintiff.
Francis I. Gowen, of Philadelphia, Pa., for defendant.

THOMPSON, District. Judge. [1, 2] The jury rendered a verdict in favor of the plaintiff for $36,787.45. This is the equivalent of the award by the commission of $21,094.39, principal, with interest at 6 per cent. from June 28, 1907; so that the question raised by the first reason for a new trial, whether it is excessive, depends upon whether there was sufficient legal evidence of damage before the commission upon which to base its award. That question will be taken up in a discussion of other reasons.

As to the second, third, and fourth reasons, the court was asked in the second point for charge to make a computation of percentages based on the rating of mines and the cars placed at the mines, and to instruct the jury as to such percentages. This is true, also, of the fourth point. The computation asked was the ascertainment of fact, not of law.

The second, third, and fourth reasons are all based upon the plaintiff's contention that the only discrimination as to which the plaintiff could recover was in respect to distribution of cars actually placed in the Tyrone region. The plaintiff's case was not based upon that claim alone, for in their petition they charged discrimination, not only as to illegal preferences in the distribution of cars actually distributed in the Tyrone division, but also discrimination through the arbitrary allotment of 640 cars per day to other divisions for the use of other mines in those divisions. Evidence in support of a claim of preference in allotment of cars to other divisions was given before the Interstate Commerce Commission to show that the defendant's employés received orders to give the Berwind-White Coal Mining Company a special allotment of 500 cars daily, and of that the commission in its report says:

"It must be condemned in strong terms as an undue preference of one company and district, and an undue discrimination against coal operations in another district."

Evidence was also offered before the commission, and read to the jury at the trial under objection, to show sales by the defendant to the Berwind-White Coal Mining Company of 1,000 of its own cars, and to two other shippers of 700 and 500, respectively, of its own cars, making a total of 2,200 cars sold to shippers.

Certain testimony of Mr. Hutchinson, general manager of defendant, given in the coal and oil investigations, was offered before the commission, and read in evidence at the trial, to show that the Pennsylvania System was thereby deprived of 140 cars per diem for general distribution. The 500 cars per diem arbitrarily allotted to Berwind-White Coal Mining Company, and the 140 cars per diem referred to in Mr. Hutchinson's testimony, made up the 640 cars per diem of which the plaintiffs claimed the Tyrone division was deprived, and which were used preferentially in other divisions; and testimony was offered to show that the general distribution of those cars would have meant 67 cars per day for the Tyrone division, in addition to those actually distributed in that division.

As to the 1,000 cars sold to the Berwind-White Coal Mining Company, the commission found that the defendant to that extent had

diminished its capacity to supply the coal car requirements of other coal operations upon its lines, and further stated that—

"While the right, as a legal proposition, of an interstate carrier to sell its equipment, has not been discussed before us in these cases, and therefore will not be considered in this report, the least that can be said of that transaction is that it indicates a desire on the part of the defendant at that time to forward the interests of a particular company at the expense of its competitors."

This report concludes:

"For the present, and for the reasons there explained (in Hillsdale Coal & Coke Co. v. P. R. R. Co. [D. C.] 237 Fed. 272) we shall limit our order to a finding that in the several respects here mentioned the defendant was guilty of a discrimination against these complainants, leaving for determination after further argument the question of the extent to which the complainants may have been damaged thereby."

The "several respects here mentioned" refer to the special allotment of 500 cars daily to the Berwind-White Coal Mining Company, the sale of the defendant's own system coal cars, and the distribution rules of the defendant, resulting in not charging allotments to the Berwind-White Coal Mining Company of its private cars against its pro rata share. The report of the commission contains a finding of the ultimate fact of discrimination as to the 500 cars daily allotted to the Berwind-White Coal Mining Company, and distributed at its collieries on other divisions, and that is sufficient to establish it as prima facie evidence for the jury. The facts and conclusions stated concerning sales of cars to shippers, with the result that the defendant to that extent diminished its capacity to supply the coal car requirements of other coal operations upon its lines, and the finding that that indicated a desire on the part of the defendant to forward the interests of a particular company at the expense of its competitors, was sufficient to go to the jury as prima facie evidence of discrimination, but the legal right to sell its cars to its customers was not passed upon. Its effect as a discrimination, however, was stated as a fact. Meeker v. Lehigh Valley Railroad Co., 236 U. S. 412, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691.

To have charged in accordance with the defendant's request as to points 2, 3, and 4, therefore, would have been taking from the jury all evidence of discrimination in preferring other divisions to the Tyrone division, and would have confined the claim entirely to discrimination as to distribution of cars actually placed in the Tyrone division.

The fifth reason was based upon the refusal of a request containing in part language identical with that the refusal of which was held error when this case was before the Supreme Court. 242 U. S. 891, 37 Sup. Ct. 49, 61 L. Ed. 165. In the form in which it was presented, the court was asked to state to the jury a mathematical demonstration, and to instruct the jury that the mathematical demonstration had been adopted by the commission and was erroneous, and that, therefore, the plaintiffs were not entitled to recover. When the case was before the Supreme Court, it was upon a record which did not contain certain testimony that had been before the commis-

sion in relation to arbitrary allotments of cars nor the testimony of Mr. Hutchinson, general manager of the defendant, taken in the oil and coal investigations, and the plaintiffs relied entirely in their proof of damages upon what was contained in the reports of the commission.

In the present trial other evidence was introduced, embodying not only the testimony taken before the commission, but the testimony of witnesses to establish the preferential and discriminatory practices in relation to the special allotments of cars, and the diversion to other divisions of the defendant's fuel cars sold to shippers. Under these circumstances, it was the duty of the court to allow all competent evidence to go to the jury and to have them determine the questions of fact, including the question as to whether there was any other evidence before the commission to sustain an amount of damages coinciding with the amount which it would have awarded if Exhibit No. 10 had been the basis of their award. In the point the court was requested to find the facts. The defendant, therefore, in my opinion, was not entitled to have the fifth point given to the jury.

The sixth point was an instruction that there was no evidence in the proceedings before the commission of discrimination upon which the award could be based, and the seventh that there was no evidence before the jury upon which an award for discrimination could be based. These two points left out of consideration entirely all the evidence in relation to preferential allotments to other divisions and to mines in the Tyrone division, and were therefore, in my opinion, properly declined.

I see no ground upon which the case could have been taken from the jury as requested by the eighth point, the refusal of which is the subject of the eighth reason for a new trial.

The ninth point is identical with the eighth point presented at the former trial, and which it was held by the Supreme Court upon the testimony produced at that trial should have been given in charge to the jury.

Exhibit No. 10, which was the subject of the point, was thoroughly discussed in the charge, and after discussing the bearing of that exhibit upon the finding of the commission the jury were charged as follows:

"The defendant contends, and it properly contends, that if the commission based its finding on the proposition that the plaintiffs should have received cars equal to what the favored shippers got, that that was an erroneous theory on which to award them damages, because if the favored shippers were getting unlawfully more cars than they were entitled to, it does not follow, and of course it would be contrary to law, that the plaintiffs should also get more than they were entitled to so as to have a quota equal to that of the favored shippers."

After discussion of the prima facie effect of the report of the commission, the charge proceeds:

"But the fact that it is prima facie evidence does not preclude it from attack, and the defendant has offered its evidence, and has argued to you, and you are instructed as a matter of law, that if the finding of the commis-

sion was based on that percentage derived from those tabulations, and there is no other sufficient evidence before the commission to establish these amounts, that the finding of the commission was an erroneous one, and the jury are justified in disregarding the report of the commission as evidence."

It was then pointed out to the jury that there was other evidence before the commission, which they had a right to take into consideration, and after instruction that, if they found for the plaintiffs, it must be because they found there was sufficient evidence before the commission upon which to base its finding, and that finding was not based on Exhibit No. 10, the jury were charged as follows:

"If you should find that the conclusion of the Interstate Commerce Commission that the plaintiff in the year ending April 1, 1905, should have received cars equal in capacity to 59.9 per cent. of the aggregate of their mine's daily rating, and in the period between April 1, and October 18, 1905, cars equal in capacity to 59.6 per cent. of the aggregate of their mine's daily rating—if you should find that that conclusion was reached or arrived at because of the evidence presented by the plaintiff that the aggregate of the cars placed by the defendant at certain mines which had been selected for the purpose of comparison from those comprised in the region in which the plaintiff's mine was located, had been equal in the earlier period to 59.9 per cent. and in the later period to 59.6 per cent. of the aggregate ratings of these selected mines, for the basis of the commission's conclusion, then the award was an erroneous one, and under those circumstances the finding of the commission would lose its effect as prima facie evidence, and you would only be justified in finding for the plaintiff if you find that from the other evidence offered before the commission, either of discrimination through distribution to favored shippers in the Tyrone region, or through withholding cars from the Tyrone region, which should have been distributed there, the commission was justified in arriving at that conclusion. If you find that the commission was justified in arriving at that conclusion, or are satisfied from that evidence, and that evidence is reinforced by further evidence that the plaintiff has offered in the case, then you would be justified in finding a verdict in favor of the plaintiff, and assessing damages at the amount found by the commission."

The jury were also instructed, which was in the defendant's favor, that their verdict should not exceed the amount of the damages found by the commission. It was for the jury to find under the evidence whether the 640 cars distributed to other divisions or the 500 cars arbitrarily allotted to Berwind-White Coal Company, if distributed pro rata, would have brought the daily allotment up to a sufficient number of cars to show that the plaintiffs upon being deprived of their share suffered in damages to the extent found by the commission. There was every endeavor at the trial to be guided by the opinion of the Supreme Court, and to give the defendant the full benefit of its point, in so far as it was applicable to the testimony presented at the present trial. If it had been given in charge to the jury as requested, it would have confined their consideration merely to the report of the commission and the testimony which was presented at the former trial. It would have taken away from their consideration all the additional evidence offered at the present trial.

In the tenth point, the subject of the tenth reason for a new trial, the court was asked to charge the jury that the commission had declined to make an award to the plaintiffs based upon sales of cars made by the defendant or the special orders directing the placing of

500 cars at the mines of the Berwind-White Company. This would have been in effect instructing the jury that the award was based upon Exhibit No. 10 rather than leaving it to find the fact. There is no statement in the report that the commission so declined.

The eleventh point asked the court to find as a fact, and to instruct the jury as a matter of law, that the sale of the defendant's cars was not a preferential or discriminatory act, affecting the distribution of cars during the period in controversy, and was, I think, properly declined.

The twelfth point, the subject of the twelfth reason, was declined because there was evidence from which calculation could be made showing what the plaintiffs would have received if the sales had not been made, and the same reason applies to the declining of the thirteenth point which is the subject of the thirteenth reason.

The fourteenth, fifteenth, and sixteenth reasons are based on the charge that the verdict was against the evidence, the weight of the evidence and against the law, and, in my opinion, cannot be sustained as reasons for a new trial.

The seventeenth reason is based on the admission, over the defendant's objection, of volume 8 of the testimony taken before the Interstate Commerce Commission in the coal and oil investigation. This testimony was offered under the following circumstances: Mr. Jacoby, one of the plaintiffs, testified before the Interstate Commerce Commission, and the evidence was offered at the trial to show through testimony given by Mr. Hutchinson, general manager of the Pennsylvania Railroad Company, in the coal and oil investigation, that 2,-200 cars had been sold by the defendant to certain shippers, and that the withdrawal of this number of cars from the .company's service would mean the withdrawal of 140 cars per day from the system. Mr. Jacoby had read from an abstract of that testimony and it was admitted before the commission without objection.- I think, although the testimony was not in a judicial proceeding, that it was competent for the plaintiffs to introduce at the trial of this case, to show upon what Mr. Jacoby's testimony before the commission was based and as an admission by the defendant.

As to the eighteenth reason, no ruling by any court has been called to my attention which holds that the amount of the award is not, along with other facts, prima facie evidence under section 16 of the Interstate Commerce Act (Comp. St. § 8584), which provides that the commission shall make an order directing the carrier to pay to complainant the sum to which he is entitled, and that in a suit based upon the commission's order the findings and order of the commission shall be prima facie evidence of the facts therein stated. This reason is not urged by the plaintiffs in their brief, nor was it made the subject of an exception.

As to the nineteenth reason, the instruction to the jury that there was evidence to the effect that some of the mines in the district, which were not operating at certain times, were nevertheless receiving cars, was erroneous, and was corrected before the jury retired. The de-

fendant contends that the court erred in the same part of the charge in saying to the jury:

"There is evidence to the effect that operators who were not demanding cars were receiving cars, having cars allotted to them."

I think this is harmless, inasmuch as it was followed by the explanatory statement:

"There is evidence to the effect, and it is so stated in the commission's report, that the defendant's employés were instructed to make a distribution of at least 500 cars daily to the Berwind-White Company," etc.

I cannot see that there was harm done to the defendant by the statement that the operators who were receiving the allotted cars were getting them without demand, and it is apparent that the reference made was to the arbitrary allotment to the Berwind-White Company.

The twentieth, twenty-first, and twenty-second reasons are, in my opinion, without merit.

As to the twenty-second reason, the question was left to the jury upon the ground that, when it is once established that a condition or fact exists, it is presumed to continue for a reasonable time thereafter until the contrary is shown. There was nothing in the case to show that orders for car allotments were made annually so that it was for the jury to draw whatever inference was justified by the fact that the order was in effect in 1902, 1903, and 1904.

The motion for a new trial is denied.