## UNITED STATES *v.* ARCHIBALD McNEIL & SONS CO., INC.

ERROR TO' THE DISTRICT COURT OF THE UNITED STATES' FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 444.   Argued January 9, 12, 1925.—Decided March 2, 1925.

1. In the absence of a bill of exceptions or special findings, the jurisdiction of the District Court over a law case tried by stipulation without a jury is determinable, on direct appeal to this Court, only upon the questions of law apparent on the face of the pleadings. P. 307.

2. An action in the District Court to recover just compensation for goods alleged to have been commandeered or requisitioned under the Lever Act, may be brought, under § 10 of that statute, in the District where the seizure occurred. *Id.*

3. Where a statement of claim filed in the District Court under § 10 of the Lever Act sought recovery of the value of coal alleged to have been requisitioned under that act by the President through the Fuel Administrator and used by the United States in the operation of various railroads—" a public use connected with the common defense,"—*held* that objections raised by demurrer, in terms questioning the jurisdiction upon the grounds that there had been no preliminary determination of value, and partial payment, as contemplated by the statute, and that the cause of action was for a diversion of the coal, under § 25, remediable only by action against the agent designated by the President under § 206 (a) of the Transportation Act, 1920,—did not go to the jurisdiction of the court but concerned the merits. *Binderup* v. *Pathé Exchange*, 263 U. S. 291. *Id.*

Affirmed.

JURISDICTIONAL appeal, under Judicial Code, § 238, from a judgment of the District Court awarding compensation for coal taken by the Government.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

Whatever the allegations in the statement of claim to the effect that the suit was brought under § 10 of the Lever Act by reason of the fact that the President had commandeered coal pursuant to the provisions of that act, when it appeared that the coal was not thus commandeered but was really diverted by the Fuel Administrator for the use of railroad companies which were at the time being operated under federal control, the suit should have been dismissed, for the District Court had no jurisdiction to entertain a suit against the United States for coal thus diverted and thus used.

If these two railroads had not been under government control at this time, and the coal had been diverted to their use by the Fuel Administrator under preference regulations and the railroads had not paid for it, it will undoubtedly be conceded that the only remedy would lie in separate actions against each railroad company. Compliance with regulations of the Fuel Administrator, even though a loss is thereby incurred, will not support an action against the United States. *Morrisdale Coal Co.* v. *United States,* 259 U. S. 188; *Pine Hill Coal Co.* v. *United States,* 259 U. S. 191.

The fact that the railroads were under federal control does not alter the principle. While federal control lasted the plaintiff could have sued the Director General for this coal under the Act of March 21, 1918, c. 25, 40 Stat. 451, and General Order No. 50. *Missouri Pacific R. Co.* v. *Ault,* 256 U. S. 554. After federal control ceased the plaintiff could have sued the Agent designated by the

President under § 206 (a) of the Transportation Act of February 28, 1920, c. 91, 41 Stat. 456, 461.

Each railroad operated under federal control was operated as a separate entity. *Missouri Pacific R. Co.* v. *Ault, supra.* Therefore on a cause of action arising out of federal operation of the Boston & Maine Railroad suit must be brought against the Agent designated by the President, and service must be had on an agent of the Boston & Maine Railroad or some person designated by the President, and the action must be brought in a court which would have jurisdiction over the Boston & Maine Railroad.

The Lever Act was passed August 10, 1917, while the railroads were under private operation. At that time no suit could have been maintained against the United States under the Lever Act arising out of the use by a railroad corporation of coal obtained by it through the Fuel Administrator. *Pine Hill Coal Co.* v. *United States, supra.*

After the Federal Control Act of March 21, 1918, and General Order No. 50, any suit for coal used upon any railroad under federal operation must have been brought against the Director General in a court which but for federal operation would have jurisdiction of a suit against the railroad company, and after federal control ceased, on March 1, 1920, the suit must have been brought against the Agent appointed by the President under that Act. Here was a complete, adequate, and, we claim, an exclusive remedy.

*Mr. George Deming,* for defendant in error. *Mr. Charles H. Burr* was on the brief.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

Seeking to recover $17,422.32 as compensation for 3,840.9 tons of bituminous coal, defendant in error, a

Connecticut corporation, instituted this action against the United States by filing statement of claim in the United States District Court, Eastern District of Pennsylvania.

It alleged—

That jurisdiction of the action arises under the Fifth Amendment and the tenth section of the Lever Act, c. 53, 40 Stat. 276, 279.

That the-coal in question had been shipped from. the mines under valid contracts during the first part of October, 1919, was owned by the claimant, and prior to October 30, 1919, was at Port Richmond Piers, Philadelphia, or at Port Reading Piers, New Jersey.

That " by virtue of the authority conferred by the aforesaid Act of Congress, the President of the United States, acting by and through the Fuel Administrator at Port Richmond Piers, Philadelphia, or at Port Reading Piers, New Jersey, commandeered and requisitioned " this coal during November and December, 1919. " The said coal was commandeered and requisitioned from or through the Commissioner of the Tidewater Coal Exchange, the Superintendent of Transportation of the Philadelphia & Reading Railroad Company, the Shipping and Freight Agent of the United States Railroad Administration at Port Reading Terminal Piers, New Jersey, the Bituminous Coal Distribution Committee, the Regional Coal Committee, the Philadelphia & Reading Railroad Company, the Port Reading Railroad Company, the Federal Treasurer at Port Reading Terminal Piers of the United States Railroad Administration, and the Jamison Coal & Coke Company, the vendors of the said coal to the plaintiff. All of the aforesaid coal was received, accepted, retained and used by the United States of America, and used in the operation of various railroads, to wit: Boston & Maine Railroad, Maine Central Railroad; which said use was a public use connected with the common defense."

That the fair and reasonable value of the coal was $4.536 per ton f. o. b. the mines; that nothing has been

42684°—25——20

paid to claimant on account of said coal so commandeered and requisitioned, and it should have judgment for the value thereof with interest.

A motion by the United States to dismiss the action upon the ground that the claimant was a citizen of Connecticut and therefore the court lacked jurisdiction, was overruled. Thereupon, the United States interposed a demurrer and set up that the court had no jurisdiction of the cause; that the statement of claim showed no cause of action; that under the Lever Act district courts of the United States have jurisdiction of actions only after determination by the President of the value of the property taken, expression of dissatisfaction by the owner, and payment of seventy-five per centum of the determined amount; that the complaint sets forth a diversion of coal under § 25 of the Lever Act, not a requisition under § 10, and that the remedy, if any, was to sue the Agent designated by the President under § 206 (a) of the Transportation Act, 1920, c. 91, 41 Stat. 456, 461. This was overruled and the United States answered.

It was stipulated by counsel that, " a jury trial being waived, the issues of fact in this case may be tried and determined by the court without the intervention of a jury, in accordance with §§ 649 and 700 of the United States Revised Statutes." The cause was heard by the court upon the pleadings and evidence. What purports to be a transcript of the latter is printed; but it was not made part of the record by bill of exceptions. The trial judge filed an opinion and entered judgment for the claimant. No special findings were asked or made.

The cause is here by direct writ of error. The parties agree that only the question of jurisdiction is open. For the United States it is said, " the court below was without jurisdiction to render the judgment, and that is the sole question presented."

As the record contains no bill of exceptions, upon this
direct writ of error we can review only questions of law ap-
parent on the face of the pleadings in so far as they di-
rectly relate to the court's jurisdiction. *Insurance Com-
pany* v. *Folsom,* 18 Wall. 237; *Law* v. *United States,*
266 U. S. 494; Judicial Code, § 238.

Jurisdiction was invoked under the Lever Act. The
claim is for something alleged to have been com-
mandeered or requisitioned by the President, as pro-
vided by § 10, and this section confers jurisdiction with-
out qualification upon district courts to hear and deter-
mine controversies directly resulting from such action.
*Houston Coal Co.* v. *United States,* 262 U. S. 361, 365.
Proceedings in the district where the seizure actually oc-
curred are not forbidden, and seem entirely appropriate.
The allegations of the complaint were sufficient to set
out a substantial claim under a federal statute. Accord-
ingly, there was jurisdiction in the court to pass upon the
questions so presented. *Binderup* v. *Pathe Exchange,* 263
U. S. 291, 305.

*Affirmed.*