**BALTIMORE & O. R. CO. et al. v. BRADY.**
No. 3283.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1932.

William C. Purnell, of Baltimore, Md., and George M. Hoffheimer, of Clarksburg, W. Va. (Charles R. Webber, of Baltimore, Md., E. A. Bowers, of Elkins, W. Va., and Eugene S. Williams, of Baltimore, Md., on the brief), for appellants.

George T. Bell, of Washington, D. C., and Samuel T. Spears, of Elkins, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action instituted pursuant to section 16 (2) of the Interstate Commerce Act as amended (49 USCA § 16 (2) to recover damages sustained by the plaintiff, A. Spates Brady, as a result of the failure and refusal of the defendants the Baltimore & Ohio Railroad Company and the Western Maryland Railway Company, to furnish the plaintiff coal cars in which to ship the product of his coal mine. Prior to the institution of the action plaintiff applied for relief to the Interstate Commerce Commission under section 9 of the act (49 USCA § 9); and the commission found the acts and practices complained of to be discriminatory and unduly prejudicial and retained the cause for the purpose of assessing his damages. Upon a later hearing it found that complainant had sustained damage as a result of the wrongful conduct of defendants in the sum of $57,735.11, but that he might have reduced this damage to $12,838.31 by accepting an offer of defendants relating to the furnishing of cars and entered a reparation order for the latter amount. The defendants refused to pay even this amount and plaintiff filed his petition in the District Court under section 16(2) of the act, asking that he have judgment for the full damages which he had sustained, including not only the amount of the reparation order, but also the amount by which his damages had been diminished under the holding of the commission as to his duty to reduce damages, contending that this holding was unwarranted by the facts and was beyond the power of the commission.

There was a verdict and judgment for the plaintiff for the sum of $63,048.60 with interest from August 7, 1931, the date of the verdict; and defendants have appealed. The record contains no bill of exceptions. See Baltimore & Ohio Railway Co. et al. v. Baker (C. C. A. 4th) 58 F.(2d) 627. Consequently the only assignments of error which we may consider are those which relate to the record proper. The question which these raise is whether the judgment in favor of the plaintiff is supported by the petition. U. S. v. Archibald McNeil & Sons, 267 U. S. 302, 45 S. Ct. 258, 69 L. Ed. 620; Thornton v. National City Bank (C. C. A. 2d) 45 F.(2d) 127, 129.

The petition alleges that between October 14, 1922, and April 1, 1923, plaintiff owned and operated a coal mine on the Coalton branch of the Baltimore & Ohio Railroad in proximity to coal mines of the West Virginia Coal & Coke Company, a competitor of plaintiff, on the same branch; that some time prior to October 14, 1922, the Western Maryland Railway Company was granted trackage rights over this branch to the Coal & Coke Company's mines under an agreement which was in effect until April 1, 1923; that these trackage rights were exercised throughout the period between said dates by the Western Maryland, which published and had in effect during the period schedules naming rates for the transportation of coal from the mines of the Coal & Coke Company to interstate points on its lines and the lines of numerous connecting railroads; that the effect of the trackage rights granted the Western Maryland was to give to the mine of plaintiff the status of a mine served by two lines of railroad; that during the period in question a car shortage existed and the effect of the trackage agreement was to give plaintiff the right to order his allotment of cars and ship his coal via either or both of the lines as his judgment might dictate; that this right was denied by the defendants, although they daily honored the orders for cars of his competitor; that throughout the period plaintiff filed written orders for cars with the Western Maryland, which, except in one instance, refused to place cars for loading at his mine, whereupon he filed orders with the Baltimore & Ohio; that the discriminatory acts and practices of the defendants in refusing to furnish cars to plaintiff in accordance with his right were unjust and unduly prejudicial and resulted in great loss and damage to him; that the Western Maryland had a better supply of cars available for distribution and, if that road had honored his daily requisitions for cars, he would have been entitled to receive during the period 818.1 cars which he could have loaded with an average of 53.55 tons of coal;

that he actually received only 372.8 cars (the commission in its report attached to the petition found that only 5 of these were furnished by the Western Maryland and the remainder by the Baltimore & Ohio); that the state of the market was such that he could have sold the entire output of his mine at the same average price as the coal actually produced; that if he had been furnished the cars to which he was entitled he could and would have loaded them with coal and sold same at a profit; and that, as a result of the unlawful acts and practices of defendants, he lost profits on the coal that he would otherwise have sold, and suffered an increase in cost of producing the coal actually mined and sold, amounting in all to $57,735.11, for which amount, with interest from April 1, 1923, he was entitled to judgment against defendants.

The petition further alleges that in October, 1923, the plaintiff filed with the commission a complaint against the defendants alleging that the refusal to furnish him with cars as alleged was in violation of the Interstate Commerce Act as amended and praying an award of reparation for the damages sustained; that the commission found that plaintiff should have been permitted to divide his orders for cars to the defendants in such divisions of 100 per cent. of the rating of his mine as his judgment dictated, that cars should have been furnished in conformity with the supply of cars available on the respective roads, and that the acts and practices of defendants resulted in undue prejudice to plaintiff; that the commission then set the case down for further hearing on the question of damages and upon such hearing found the excess mining costs and lost profits of plaintiff amounted to $57,735.11, as claimed, but held that in computing damages this amount should be reduced by the amount by which the loss would have been mitigated if plaintiff had accepted an offer of defendants to furnish his quota of cars on the basis of 80 per cent. by the Western Maryland and 20 per cent. by the Baltimore & Ohio and also by the amount attributable to the estimated excess loading of the cars, as same had a rated capacity of only 50 tons per car; that the commission made revised calculations based upon these mitigation of loss and average loading findings and arrived at the sum of $12,838.31, for which a reparation order in favor of plaintiff was entered; that a copy of the reparation order was served upon defendants but that they had failed and refused to observe the order or make the payment therein required; that the mitigation of loss

finding and the average loading finding, as a result of which the damages sustained by plaintiff were reduced in the order of the commission, were erroneous as a matter of law and were beyond the power of the commission; and that plaintiff was entitled to judgment not only for the amount of the reparation order and interest, but also for such additional sum as would include the full damages which he had sustained.

The two reports and the reparation order of the commission were attached as exhibits to the petition. The first report deals with the administrative questions as to whether a mine located on a single line of railway is entitled to rating as a two-road mine because of a trackage agreement giving another line of railway access to the mines of a competitor, and as to whether a refusal to accord such mine the status of a two-road mine with right to order its full quota of cars from either road should be held discriminatory and prejudicial where it has been offered cars in the same proportion that they are furnished to its competitor. The commission found the facts on all material matters to be virtually as alleged in the petition and answered both questions in the affirmative. The following quotations from the report of the commission (112 I. C. C. 244) will show the nature of the administrative questions decided and the action of the commission thereon:

"Defendants contend that a joint-mine status was not conferred upon the mines of the coal company, because of an understanding which they had with the coal company to the effect that its mines were not permitted to order cars in excess of 80 per cent. and 20 per cent. of their rating from the Maryland and B. & O., respectively. * * * In his complaint complainant prays, in part, that defendants be required to accord to his mine treatment in service, cars, and rates to his mine similar to that accorded the mines of the coal company. Defendants contend that complainant was offered the same arrangement but he declined and can not therefore be heard to complain. Whether or not this is true and whether or not similar service was in fact offered complainant depends upon surrounding circumstances. * * *

"It is clear from the above and other evidence of record that the arrangement whereby the coal company's car supply would be furnished by the Maryland and B. & O., respectively, in the proportion of 80 and 20 per cent. was adapted to the needs of the coal company based upon their past shipments. It is also clear that the arrangement was the

result of conference and agreement with the president of the coal company. Similar consideration was not given complainant, but he was advised that cars would be supplied by both carriers only in the proportion of 80 and 20 per cent. as was done with the coal company. Can it then be said that the complainant was not subjected to undue disadvantage? * * *

"It is well established that a mine served by two roads enjoys advantages not possessed by a mine served by only one road. The reasonable enjoyment of these advantages should be protected. We think also that carriers may not, by withholding their equipment or facilities, dictate or control the markets which a particular shipper shall seek or enjoy, while adapting their services to the needs of a competing shipper. * * * By fixing the proportion of car supply which the coal company would be furnished by the respective carriers in conformity with its customary shipments and after conference with the president of the coal company these advantages were made available to the coal company. When fixing the proportion of car supply which would be furnished by the respective carriers to complainant like consideration was not given, but he was offered arbitrarily and without regard for the requirements of his business that which had been arranged for his competitor after deliberation. Such service would not have been similar or on a basis of equality between the shippers. The complainant was subjected thereby to undue and unreasonable disadvantage. Under the circumstances complainant should have been permitted to divide his orders for cars to the respective carriers in such divisions of 100 per cent. of the rating of his mine as his judgment dictated and cars should have been accordingly furnished in conformity with the supply of cars available on the respective roads. Upon all the facts of record we find that the acts and practices of defendants whereby they accorded Maryland service to the mines of the West Virginia Coal & Coke Company located on the Coalton branch of the B. & O. during the period from October 14, 1922, to April 1, 1923, while failing to accord similar service to complainant's mine located intermediate thereto resulted in undue prejudice to complainant in the matter of car supply."

The second report dealt with the question of plaintiff's damage. 152 I. C. C. 327. It found that plaintiff "in fact ordered a 100 per cent. supply of cars from the Western Maryland, but since that defendant would not honor his requisitions on that basis, he also placed his orders with the B. & O."; that he was entitled to receive from the Western Maryland 818.1 cars during the period in question, but actually received only 5 cars from the Western Maryland and 367.8 from the Baltimore & Ohio; that the cars furnished were loaded with an average of 53.35 tons; that the figures upon which plaintiff claimed loss of $57,735.11 were not questioned; that defendant's contention that plaintiff's mine was excessively rated would not be sustained in the absence of showing as to the ratings of other mines in the district; and that the amount claimed by plaintiff as damages would be reduced only because of the mitigation of loss finding and the average loading finding to which we have heretofore referred. With respect to these the report states:

"Complainant's mine was being served exclusively by the B. & O. He desired to order cars from the Western Maryland, and through verbal and written communications the matter was brought to the attention of B. & O. and Western Maryland officials. Complainant was informed that his competitors on the B. & O. Coalton branch were ordering 20 per cent. of their car supply from the B. & O., and 80 per cent. from the Western Maryland, and that a division of his orders on that basis would be acceptable. This proposition was rejected, as complainant desired to place orders for car supply with either or both carriers as he saw fit. At the hearing on damages, a witness for complainant denied that his mine was offered the 20-80 basis, but the contrary is clearly and repeatedly shown by testimony of the same witness at the first hearing. * * *

"It is a familiar rule that a party suffering loss from breach of duty ought to do what a reasonable man would do to mitigate his loss. United States v. United States F. & G. Co., 236 U. S. 512 [35 S. Ct. 298, 59 L. Ed. 696]; Warren v. Stoddart, 105 U. S. 224 [26 L. Ed. 1117]; Western Real Estate Trustees v. Hughes [C. C. A.] 172 F. 206; Hall v. Paine [224 Mass. 62], 112 N. E. 153 [L. R. A. 1917C, 737]. That principle is applicable here. By reasonable action on his part in accepting defendants' 20-80 offer, complainant could have increased his production to the extent of 1,825 tons in October, 1,940 tons in November, 3,960 tons in December, 4,950 tons in January, 2,545 tons in February, and 1,485 tons in March. To this extent his damage was due to his own action and defendants can not reasonably be expected to compensate him therefor. Com-

plainant also erred in computing the tonnage that he could have produced, if he had been allowed to avail himself of the Western Maryland's car supply, by using an average loading of 53.55 tons per car. Under the rules 50 tons is used in determining the daily car rating and is likewise used in the rules governing distribution to coal mines. Making the latter correction, the profit per ton, if complainant had been permitted to order 100 per cent. of his rating from the Western Maryland, would have been as follows: * * *"

It is clear from this statement that the question as to the sufficiency of the petition to support the judgment divides itself into three minor questions: (1) Whether the petition alleges a cause of action upon which suit may be maintained; (2) whether the petition shows that plaintiff sustained damages to the amount adjudged in his favor; and (3) whether, in any event, plaintiff should not be limited in his recovery to the amount awarded by the commission in its reparation order. We shall consider these questions in the order named.

■ On the first question, defendants contend that no cause of action is alleged because plaintiff was not entitled to Western Maryland car service, and, even if so entitled, was not prejudiced because the Coal & Coke Company was restricted to the 80-20 arrangement offered plaintiff. We think it clear, however, that plaintiff attacked before the commission the rule or practice of the carriers, and not merely the discriminatory enforcement of a rule, and that consequently the commission was called upon to prescribe the standard of service that should have prevailed and that its administrative powers were invoked under section 15 of the Interstate Commerce Act, as amended (49 USCA § 15) and not merely its quasi judicial powers. Pennsylvania R. Co. v. Puritan Mining Co., 237 U. S. 121, 131, 35 S. Ct. 484, 59 L. Ed. 867; Morrisdale Coal Co. v. P. R. R. Co., 230 U. S. 304, 313, 33 S. Ct. 938, 57 L. Ed. 1494; Powers v. Cady (D. C.) 9 F.(2d) 458, 459. In such cases, the rule is well settled that we are bound by the action of the commission. Mitchell Coal & Coke Co. v. P. R. R. Co., 230 U. S. 247, 258, 33 S. Ct. 916, 57 L. Ed. 1472; Morrisdale Coal Co. v. P. R. R. Co. supra; U. S. v. L. & N. R. Co., 235 U. S. 314, 320, 321, 35 S. Ct. 113, 59 L. Ed. 245. If, however, the questions raised be considered as questions of law which the courts have a right to review, we are satisfied, for the reasons given by the commission, that its action thereon was correct. 112 I. C. C. 244. See, also, St. Louis

S. W. R. Co. v. U. S., 245 U. S. 136, 144, 38 S. Ct. 49, 62 L. Ed. 199; U. S. v. P. R. R. Co., 266 U. S. 191, 197, 199, 45 S. Ct. 43, 69 L. Ed. 243.

■ On the second question, the contention of defendants is that the petition and attached reports of the commission show that the deductions made by the commission on account of its mitigation of loss finding and its average loading finding were properly made and that plaintiff is therefore not entitled to recover more than the amount of the award of the commission. We may eliminate the average loading finding from consideration, as verdict and judgment are for an amount less than the damage claimed by more than the amount of the average loading deduction. As to the mitigation of loss finding, this is based upon the findings contained in the report of the commission, which are admittedly based upon conflicting evidence, and not upon any facts alleged in the petition. Questions with regard thereto were thus raised to be passed upon by the jury in the light of the evidence, but there was nothing in the petition itself which required the deduction.

But even if the facts contained in the report of the commission be considered as incorporated in the petition, we think that it clearly appears that the deduction on account of the diminution of loss finding was erroneous as a matter of law. Plaintiff had a right to order 100 per cent. of his car supply from the Western Maryland. It appears that he actually did order same in accordance with this right and that defendants wrongfully refused to recognize his requisitions. The fact that they offered to furnish him less than he was entitled to receive does not excuse their default or diminish his right to damages. It is true that it is the duty of one who is injured by another's breach of contract to use every reasonable effort to diminish his damages. But plaintiff did all that he was required to do when he placed orders for the cars to which he was entitled with the Western Maryland and upon failure to get them filed requisitions with the Baltimore & Ohio and accepted all cars that were tendered him by both railroads. It was not incumbent on him to accept an offer of less than he was entitled to receive from the Western Maryland. Its offer of the 80-20 basis did not preclude it from furnishing the cars to which he was entitled when he made requisitions for them; and the responsibility for his damage rested not upon him but upon it. It is unthinkable that a party in default should escape liability for damages by attempting to force the

other party to accept part performance as a condition to any performance at all. A party under contract to deliver 100 bales of cotton, for example, might diminish damages by proof that the other party could have purchased the cotton on the market at the time the contract was breached; but no court would seriously entertain the contention that damages should be diminished because he offered to deliver fifty bales in discharge of his liability to deliver a hundred.

We come then to the third question, which is the real question of the case, viz., was plaintiff precluded from recovering an amount greater than that awarded him by the commission? Defendants base their contention upon section 9 of the Interstate Commerce Act (49 USCA § 9) which provides: "Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. ✱ ✱ ✱"

Their contention is that to allow plaintiff to sue for a greater amount than awarded by the commission would be to allow him to sue in the courts for his claim after invoking the action of the commission, which is in violation of the provisions of the section quoted. Reliance is based upon Standard Oil Co. v. U. S., 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999, in which the holding was that suit might not be brought in the courts on a claim after unsuccessful application to the commission. The complete answer to this contention, we think, is that plaintiff's application to the commission was not unsuccessful and his suit is not brought under section 9. On the contrary, his application under section 9 resulted in an award in his favor which defendants refused to pay. Suit was then instituted under section 16 (2) of the act (49 USCA § 16 (2), which provides: "If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."

There is nothing in this section which limits the plaintiff to the amount awarded by the commission. On the contrary, he is required to set forth "the causes for which he claims damages" as well as the order of the commission; and it is provided that the suit shall proceed in all respects as other civil suits for damages, except that upon the trial of same the findings and order of the commission shall be prima facie evidence of the facts therein stated. Not only does the general language of the section thus provide for the trial of the cause for which damages are claimed just as other civil actions are tried, but the effect of the findings and order of the commission are limited in the exception to prima facie evidence. The question of interpretation is a typical one for the application of the maxim, "the exception proves the rule."

It is to be borne in mind that we are not dealing with a case where the commission has denied relief in an application under section 9, nor with a case where defendants have offered compliance with the order of the commission and tendered payment thereunder. In such cases different considerations may well apply. But the case is one where defendants have refused to comply with the commission's order and it has been necessary for plaintiff to institute suit under section 16 (2) to obtain relief. In such case we think it clearly the intention of the statute that the order with which defendants have refused to comply should not limit the rights of plaintiff to any greater extent than it does those of defendants. As said by Judge Dickinson in Minds v. Pennsylvania Railroad Company (D. C.) 237 F. 267, 268, 270: "After an order has been made by the Inter-

state Commerce Commission in favor of a complainant shipper against a railroad carrier for the payment of a damage award, proceedings brought in court because of the refusal of the carrier to comply with the order are properly for the damages sustained by the complainant (limited to the amount set forth in the pleadings), and such proceedings are de novo, and the damages are to be found by the jury under all the evidence, including the findings of the Commission, which are made evidence by the acts of Congress. * * * If this language of the statute is taken at its face value, and the action regarded as one for damages, the whole proceeding is simplified. If the view now presented by the defendant is taken, a host of baffling queries rush upon the mind. The obstacles which shut out this view may be summed up in the observation that, if such be the law, the defendant is given the undeserved advantage of being in a position in which it may gain, but cannot lose, and all it risks in this speculation are costs and counsel fees."

And we agree with the following language of the same judge in Hillsdale Coal & Coke Co. v. P. R. Co. (D. C.) 237 F. 272, 275:

"If, to paraphrase the language of Congress, this action, to which the act of the defendant has driven the plaintiff, is treated in all respects as an action for damages, except that all the findings of the Commission are made evidence, etc., all or nearly all troubling questions are eliminated. If the action is regarded as one to enforce the findings of the Commission, and they are further regarded as binding upon the plaintiff, but open to any attack by the defendant, then a veritable legal chaos reigns.

"It will be seen to follow that in such final action the administrative findings must (as in the case of a first action at law) conclude everybody and settle the administrative facts. The facts to be found by the jury must be open ones to the defendant, and (at least may) be alike open to the plaintiff. The simplest view which might be taken of such a proceeding is that it is to be tried (with the exceptional features noted) precisely as the action for damages would have been tried, had the plaintiff gone first to the Commission to determine the administrative facts, and then brought his action; the administrative findings included in the report being treated as such preliminary findings. This would, however, open to the plaintiff the opportunity to go beyond the cause of action presented to the Commission, and would be inconsistent with some of the provisions of the act of Con-

gress. All such inconsistencies disappear, however, if the proceedings are treated as in the nature of appeal proceedings, taking into court only the original complaint or cause of action presented to the Commission, but otherwise de novo, except for the evidentiary and other features ingrafted upon it by Congress, and with the administrative features conclusively established by the findings of the Commission, and the juridical facts open to be established by any otherwise proper evidence, and to be found under all the evidence, in the body of which is embraced the findings of fact by the Commission."

The Supreme Court, in Meeker & Co. v. Lehigh Valley R. R. Co., 236 U. S. 412, 430, 35 S. Ct. 328, 335, 59 L. Ed. 644, Ann. Cas. 1916B, 691, thus interprets the prima facie clause of section 16 (2) of the statute: "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents."

In Pennsylvania R. Co. v. Clark Bros., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406, the Supreme Court, in holding that suit might not be brought in a state court while action was pending before the commission, and that plaintiff might not seek treble damages under a state statute after invoking the provisions of the Interstate Commerce Act, but was bound by the provisions of that act, clearly intimated that the findings of the commission as to the amount of damages were not binding on the plaintiff in a suit instituted under section 16 (2) of the act. The court said at pages 472 and 473 of 238 U. S., 35 S. Ct. 896, 902: "The Federal statute governed the plaintiff no less than the defendant. In the situation in which the plaintiff stood after the Commission's finding, that statute determined the extent of the damages it was entitled to recover with respect to interstate sales and shipments, and the plaintiff was not free to seek another remedy in the state court, and there to secure treble damages under the state statute with respect to the same transactions. *This is not to say that the finding of the Commission as to the amount of damages has any other effect than that prescribed in § 16 of the act.* It is simply to hold that the plaintiff, having demanded and obtained the appropriate ruling from the Commission as to the discrimination which had been practiced, was then entitled to proceed for the recovery of

page 8 of 9

damages in accordance with the act, and not otherwise." (Italics ours.)

A case supporting the conclusion that a plaintiff is not bound by the finding of the commission on the issue of damages in a case such as this is Penn. R. Co. v. Weber, 257 U. S. 85, 42 S. Ct. 18, 66 L. Ed. 141, a case which first appears in the reports of the Supreme Court as Pennsylvania R. R. Co. v. W. F. Jacoby & Co., 242 U. S. 89, 37 S. Ct. 49, 61 L. Ed. 165. In that case the plaintiff asked only the amount of damages awarded by the commission. The Supreme Court on the first appeal reversed a judgment of the court below on account of the use of an erroneous basis of calculation by the commission. Upon a subsequent trial of the cause plaintiff recovered the original amount by the introduction of additional evidence as to damages, and this was sustained by the Supreme Court on the second appeal. The importance of the decision lies in the fact that, although the damages awarded by the commission could not be sustained, plaintiff was allowed to recover the full amount of his damages upon evidence which established the damages upon a different basis from that upon which the commission had acted. See Pennsylvania R. Co. v. Weber (C. C. A.) 269 F. 111 and Id. (D. C.) 263 F. 945.

The conclusion at which we have arrived seems not only to me compelled by the language of the statute, but also to be the necessary interpretation if grave injustice is to be averted. Although section 9 gives a right to resort to the courts as an alternative to resort to the commission, this right cannot be availed of by a shipper in a case such as this until he has secured an administrative determination by the commission of the rule upon which his rights depend. Penn. R. Co. v. Clark Coal Co., 238 U. S. 456, 469, 35 S. Ct. 896, 59 L. Ed. 1406. If, as here, this administrative determination is delayed beyond the statutory limit for bringing suit, he must recover his damages before the commission or not at all. If, in such case, errors of the commission in the computation of damages could not be corrected in suit brought in the courts upon failure of the carrier to comply with the order of the commission, the shipper would be without remedy. It is true that this reasoning would apply in cases where the commission refuses to award damages as well as in a case such as this; but the adverse decision of the commission on an administrative matter would be decisive on the shipper in all events. It is in cases where the administrative questions are decided with the shipper, and the commission erroneously decides questions affecting the amount of damages against him, that injustice is likely to result.

The case before us is an apt illustration of what we have in mind. Plaintiff could not have gone into court without obtaining from the commission an administrative determination of the questions upon which his right of recovery depended. When he obtained this determination, more than two years had elapsed and it was too late to go into court. 49 US CA § 16 (3); Phillips Co. v. Grand Trunk Western Ry. Co., 236 U. S. 662, 35 S. Ct. 444, 59 L. Ed. 774. He had to proceed before the commission or not at all. The commission decided the administrative questions in his favor and found that he had sustained damage in the amount which he claimed, but refused to award damages in this amount because of what we conceive to be an utterly erroneous view of the law as to diminution of damages. Defendants refused to pay even the amount awarded, and plaintiff was compelled to institute this suit under section 16. It seems to us that to deny him the damages which he is in law entitled to recover because of the erroneous view of the commission as to the law, is warranted neither by the language of the statute nor by any rule of law applicable in the premises. We certainly will not strain the meaning of the statute to effect what seems to us such an unjust result.

After the filing of the reparation order of the commission, plaintiff sought to enjoin the enforcement of same in a suit filed in the Northern District of West Virginia and heard before a specially constituted court of three judges. That court, two members of which are members of this, denied the relief prayed on the ground that the court was without power to grant same, but, noticing the contention of plaintiff that he stood in danger of irreparable injury, pointed out that in a suit for damages he would not be bound by the error of the commission in limiting the award. What was said by the court in that opinion is relevant here. Brady v. Interstate Commerce Commission, 43.F.(2d) 847, 851, 852.

"And when we look to the nature of reparation orders and consider the provisions which have been made for their enforcement and for the correction at law of any errors which they may contain, the conclusion that they were not intended to be included among those which might be enjoined or set aside is irresistible. As said by Judge Woolley in Pittsburgh & W. V. Railway Co. v. United States (D. C.) 6 F.(2d) 646, 648: 'An order of the Commission awarding reparation is

not a cause of action. Nor is it in the nature of a judgment on which execution may issue. It is an award of money damages and is declared by statute to be evidence, and then only prima facie evidence, of the facts found by the Commission * * * to be used only as such in an action which may be instituted after default by a carrier to obey the order of payment.' It is not thinkable that it should have been intended that a court of three judges should be convened, with direct appeal from their action to the Supreme Court, to pass upon the validity of an order which amounts to no more than prima facie evidence.

"In case a reparation order is not complied with and no suit is brought by the person in whose favor it is made, it amounts to nothing and could not, of course, be the cause of irreparable injury justifying an injunction order. If suit is brought, it proceeds 'in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated.' 49 USCA § 16 (2). As said by the Supreme Court in Meeker & Co. v. Lehigh Valley R. Co., 236 U. S. 412, 430, 35 S. Ct. 328, 335, 59 L. Ed. 644, Ann. Cas. 1916B, 691, the section of the statute making these prima facie evidence 'cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury.' If, therefore, the carrier deems the order erroneous, it has full opportunity to correct the error or defend against it upon the trial. Pittsburgh & W. V. Ry. Co. v. U. S., supra. If the party in whose favor it is made is not satisfied with it, he may in instituting his suit set forth the cause of action for which he claims damages, and the order of the Commission, and have his case proceeded with 'in all respects like other civil suits for damages,' except that on the trial the findings and order of the Commission shall be prima facie evidence of facts therein contained. There is nothing in the act, we think, which limits his recovery to the amount awarded by the Commission, and there is no reason why the recovery should be so limited. The order and findings of the Commission are prima facie evidence, just as is the report of an auditor in an action at law. Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. And there is no more occasion to limit the recovery in the one case than in the other. We are advertent to the fact that in Western N. Y. & P. R. Co. v. Penn Refining Co. [(C. C. A.) 137 F. 343], supra, there are expressions to the effect that recovery is limited to the amount awarded by the Commission; but we do not understand that this holding was necessary to the decision in that case and, at all events, we do not accept it as a correct statement of the law. Not only does the rule announced in the Meeker Case, supra, conflict with it, but so also does the intimation in Penn. R. Co. v. Clark Coal Co., 238 U. S. 456 at pages 472, 473, 35 S. Ct. 896, 59 L. Ed. 1406. It is apparent, therefore, that no irreparable injury is to be apprehended from reparation orders of the Commission, that any errors therein may be corrected in the trial provided for by statute, and that resort to injunction to set aside such orders is not permissible."

For the reasons stated, we think there was no error in the judgment below, and same is accordingly affirmed.

Affirmed.