## UNITED STATES AND INTERSTATE COMMERCE COMMISSION v. PENNSYLVANIA RAILROAD COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF PENNSYLVANIA.

No. 68.   Argued October 13, 14, 1924.—Decided November 17, 1924.

1. There is nothing in the Act to Regulate Commerce, as originally enacted, or in the Transportation Act, 1920, or in any earlier amendment, which indicates a purpose either to allow a carrier to create undue prejudice by the use of facilities possessed or to narrow the power of the Interstate Commerce Commission to prevent unjust discrimination. P. 199.

2. Two railroad companies by agreement extended, each to the other, the use of their tracks to effect terminal receipt and delivery of carload freight within a zone, in a city, so that plants within the zone having spur connections with either main line could ship or receive shipment over the other without paying an additional transportation charge for the movement over the line connected with their spurs, whereas other industries, outside the zone but in the same city and dependent on these railroads and another, were denied the like advantage. The Interstate Commerce Commission, upon finding that the situations of the industries were " substantially similar " from the standpoint of carriage, and that the practice subjected those without the zone to undue prejudice and disadvantage, ordered the two railroads to remove the discrimination. *Held,* that the discrimination was unlawful and the order valid. P. 197.

295 Fed. 523, reversed.

APPEAL from a decree of the District Court enjoining enforcement of an order of the Interstate Commerce Commission.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Henry Wolf Biklé,* with whom *Mr. George Hay Kain, Mr. F. W. Wheaton, Mr. Frederic D. McKenney* and *Mr. Francis I. Gowen* were on the brief, for appellee.

The Commission has held that discrimination or undue preference prohibited by the law results from the mere existence or non-existence of trackage facilities. This is an error of law which appears on the face of the Commission's report and which requires that it be suspended and set aside.

In § 1, par. 1, of the Commerce Act, there is a clear line of demarcation between the common carrier and the property or plant with which it performs its service. Paragraph 3 of the same section declares what is intended to be included in the term " railroad," viz, " a road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement or lease." A road over which a common carrier has trackage rights is clearly a " road in use . . . under a contract," and hence must be regarded as part of the " railroad " of such common carrier. Hence it follows that that portion of the railroad belonging to the Western Maryland over which the Pennsylvania has trackage rights under the agreement must be considered as part of the railroad of the latter in the determination of all questions relating to the extent of the obligation, if any, with respect to affording service to shippers imposed upon the Pennsylvania Company by virtue of the use of the trackage rights thus acquired by it. Therefore, no support for the theory upon which the Commission acted in the present case can be found in the Commerce Act, for this theory is that failure of the Pennsylvania to extend its trackage rights over the Western Maryland Railway subjects to undue discrimination shippers who, if such an extension were made, would be enabled to utilize directly the facilities of the Pennsylvania Company. But clearly it would seem that if a failure to extend its trackage rights involves such a re-

sult, the Pennsylvania Company would be chargeable with like discrimination because of a failure to extend its own railroad—*reductio ad absurdum.*

The granting, withholding or possession of trackage rights between carriers cannot be a basis for a finding of discrimination or undue preference. *Interstate Commerce Comm.* v. *Diffenbaugh,* 222 U. S. 42; *Ellis* v. *Interstate Commerce Comm.,* 237 U. S. 434; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515. See also *Baltimore & Ohio R. R. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 304; *United States* v. *Pennsylvania R. R. Co.,* 242 U. S. 208.

The provisions of the Commerce Act relating to the extension of railroad tracks or the abandonment of existing trackage, are entirely separate and distinct from those governing the carrier in the use of its existing plant, and did not appear in the original act. It was almost twenty years after its passage when Congress empowered the Commission to require a carrier, under certain circumstances, to accord switching connections to shippers. Hepburn Amendment, 1906, 34 Stat. 584, now par. 9 of § 1. Transportation Act, 1920, conferred additional powers upon the Commission with respect to the control of the carriers' line of railroad, § 1, pars. 18–20. By par. 21 the Commission's authority is further enlarged so as to permit it to require the extension of the carriers' line; and par. 22 provides that pars. 18–21 shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, so that such tracks may be installed or discontinued without the approval of the Commission. See *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204; *Railroad Commission* v. *Southern Pac. Co.,* 264 U. S. 331.

The insertion in the act of these provisions demonstrates that the other provisions of this legislation were not intended to confer power upon the Commission to

control the extent of the carrier's plant, but only to regulate the service rendered by the carrier with its existing plant.

That the general provisions of the Commerce Act were not intended to authorize the Commission to regulate the extent of the carrier's plant is made especially clear by § 3—under which the Commission's order in this case has been issued—and by the history of this section.

The decisions have recognized the distinction between the authority to prevent discrimination and to require the extension of the carrier's plant. The rule that there shall be no discrimination by public service corporations is one that has existed for many years, finding its roots in the common law; but the authority of the Government to require such corporations to conform the boundaries of their service to the wishes of a community is a very modern development, and one which has been justified only under specific statutory authority, only to a limited extent, and only after the most careful scrutiny as to its constitutional validity. *New York & Queens Gas Co.* v. *McCall*, 245 U. S. 345; *Chicago & Northwestern Ry. Co.* v. *Ochs*, 249 U. S. 416; *Louisville & Nashville R. R. Co.* v. *United States*, 242 U. S. 60. *Pennsylvania Co.* v. *United States*, 236 U. S. 351; *United States* v. *American Ry. Exp. Co.*, 265 U. S. 425, distinguished.

The Commission has recognized that a trackage right is the equivalent of an extension of the carrier's own tracks, and that its exercise or non-exercise cannot afford a basis for a finding of unjust discrimination. Its decision in the present case ignores the principle which it has applied in various other cases. *Alford* v. *Railway Co.*, 2 I. C. C. 771; *Commercial Club* v. *Great Northern Ry. Co.*, 24 I. C. C. 96; *Dixie Cotton Oil Co.* v. *St. Louis, etc., Ry. Co.*, 27 I. C. C. 295; *Penick & Ford* v. *Director General*, 61 I. C. C. 137; *Ridge Coal Min. Co.* v. *Missouri Pac. R. R. Co.*, 62 I. C. C. 259; *Dering Mines Co.* v. *Director Gen-*

*eral,* 62 I. C. C. 265; *Hillsboro Coal Co.* v. *C. C. C. & St. L. Ry. Co.,* 63 I. C. C. 401; s. c. 81 I. C. C. 216.

The views of a government commission or official charged with the enforcement of a statute are entitled to special weight with respect to its proper interpretation. *New Haven, N. H. & H. R. R. Co.* v. *Interstate Commerce Comm.,* 200 U. S. 361; *Logan* v. *Davis,* 233 U. S. 613; *National Lead Co.* v. *United States,* 252 U. S. 140. This consideration is especially persuasive in this case because the Commission's interpretation extended over a substantial period, and, although the Commerce Act was amended in the interval, it was not so amended as to change the provisions of the law in this regard. 2 Lewis's Sutherland on Stat. Constr., 2d ed., § 403; *Sessions* v. *Romadka,* 145 U. S. 29; *Logan* v. *United States,* 144 U. S. 263.

The Commission's order cannot be justified on the ground that it relates to a " practice " of the railroads. *United States* v. *Pennsylvania R. R. Co.,* 242 U. S. 208.

The Commission's order is invalid as arbitrary and as violating the Fifth Amendment, which prohibits the taking of property without due process of law.

The order of the Commission is invalid in that it is not limited to interstate commerce. *United States* v. *Reese,* 92 U. S. 214; *Trade-Mark Cases,* 100 U. S. 82; *Employers' Liability Cases,* 207 U. S. 463.

*Mr. C. R. Hillyer,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

York, Pennsylvania, is served by three railroads. About 100 manufacturing establishments are directly connected with them by spurs or industry sidings—most of the plants with only one of the three railroads. Where the plant is thus directly connected with the railroad which has the line-haul, it makes no extra charge for switching the car

between its road and the plant. Where the connection is not direct—that is, where in order to reach the plant the car must move for a short distance over the line of another carrier—all of the plants except 17 must pay an additional transportation charge. The more favored treatment accorded by the Pennsylvania Railroad and the Western Maryland Railway to these 17 was held by the Interstate Commerce Commission to constitute unjust discrimination; [1] and the customary order to remove the discrimination was made. *Manufacturers Assn. of York* v. *Pennsylvania R. R. Co.*, 73 I. C. C. 40. The Western Maryland acquiesced in the order. The Pennsylvania brought this suit against the United States to enjoin its enforcement. The Commission intervened as defendant. The case was heard before three judges on motions to dismiss. The court, Judge Witmer dissenting, entered a final decree granting the relief prayed for. 295 Fed. 523. The case is here on direct appeal under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220.

The 17 plants are located in a small section of the city in which lines of the Pennsylvania and of the Western Maryland run substantially parallel. About half of these plants have their spur connections with the Pennsylvania; the remainder have theirs with the Western Maryland. By an arrangement between these companies, each is permitted to, and does, pass over the road of the other with its own locomotives and attached cars in order to make deliveries to and accept shipments from plants located on spurs directly connected only with the road of the other carrier. Industries within the zone thus get the same advantage over those without it which would flow from an agreement for reciprocal free-switching or for absorption of the

---

[1] The fact that two of the 17 plants hereinafter referred to are connected by spurs with both roads may be ignored in this discussion.

switching charges which was limited to their traffic. The Commission found that, " from the standpoint of carriage, the situation of industries inside and outside the zone is substantially similar "; and that the described practice " subjects shippers . . . without the zone to undue prejudice and disadvantage." [2]   The only substantial question [3] for decision is whether the advantage enjoyed by these 17 plants, although found, as a fact, to result in undue prejudice, must be held, as a matter of law, to be a lawful preference, because of the means by which the advantage is effected.

The argument most strongly urged is this: In the absence of an appropriate order carriers are not obliged to extend or curtail their facilities; or to submit to enlarged use of their terminals. The arrangement by which the Pennsylvania and the Western Maryland extend, each to the other, the use of their tracks to effect terminal receipt and delivery of carload freight within the zone is a trackage agreement and is, in law, either a limited extension of the line of each carrier or an agreement for the limited common use by each carrier of terminal facilities of the

---

[2] The order declared that the " Commission having found in said report that the practice of the Pennsylvania Railroad Company and the Western Maryland Railway Company of extending the use of their tracks to each other for the purpose of terminal receipt and delivery of freight at industries in York within a zone described in the report, while refusing to extend the use of their tracks for the purpose of delivering or receiving freight at other industries similarly located but without the zone, under substantially similar circumstances and conditions, is subjecting various shippers and industries to undue prejudice: It is ordered, that said defendants be  . . . required to cease and desist . . . from practicing the undue prejudice. . . ."

[3] There is a faint contention that the order is invalid, also, because it is not in terms limited to interstate commerce. That it should be construed as not applying to intrastate commerce is clear. Compare *Texas* v. *Eastern Texas R. R. Co.*, 258 U. S. 204.

other. To accord to plants without the zone the same
service which, under the arrangement, is enjoyed by those
within the zone would involve either a further extension
of the tracks of each carrier or an enlargement of the com-
mon use of their terminal facilities. Under the Interstate
Commerce Act, as amended by Transportation Act, c. 91,
41 Stat. 456, the Commission might, upon proper findings
and conditions, have ordered such extension of tracks,
under the powers conferred by § 1, par. 21, p. 478; or it
might have ordered an enlargement of the common use of
terminals under § 3, par. 4, p. 479; or it might have equal-
ized rates and charges for plants within and without the
zone by exercise of the power, conferred by § 15, pars. 3
and 4 pp. 485, 486, to establish through routes and joint
rates. The grant of these specific powers indicates a pur-
pose on the part of Congress to so restrict the Commis-
sion's general power to prevent unjust discrimination, pro-
hibited by § 3, that a preference granted certain shippers
served by a carrier by virtue of the ownership of tracks or
trackage rights over other shippers not reached by the
carrier, because it does not own tracks or trackage rights
which would enable it to reach them, cannot warrant a
finding of undue discrimination; and that similarly the
withholding or possession of trackage rights between car-
riers cannot, in law, constitute undue preference. In sup-
port of this argument, attention is called to the fact that,
as originally enacted,[4] § 3, after prohibiting discrimination
as between connecting carriers in respect to facilities for
interchange of traffic, rates and charges, provides: " but
this shall not be construed as requiring any such common
carrier to give the use of its tracks or terminal facilities to
another carrier engaged in like business."

---

[4] The clause was stricken out by the amendment of the section
made in Transportation Act, 1920, 41 Stat. 479.

The argument is, in our opinion, unsound. There is nothing in the Act to Regulate Commerce, as originally enacted, or in Transportation Act, 1920, or in any earlier amendment, which indicates a purpose on the part of Congress either to allow a carrier to create undue prejudice by the use of facilities possessed, or to narrow the Commission's powers to prevent unjust discrimination. The clause quoted was doubtless inserted in § 3 to make clear that the mere grant to one carrier of the use of tracks or terminal facilities for the purpose of interchanging traffic and the refusal of such facilities to another, does not make the preference given illegal. The clause had no other effect. In this respect, it resembles the provision contained in § 22, concerning free service or reduced rates to the federal, state and municipal governments. *Nashville, Chattanooga & St. Louis Ry.* v. *Tennessee,* 262 U. S. 318.

The Commission has found, not merely that the facilities in question were granted to some and refused to others, but that the grant and refusal have, by reason of the use made and intended to be made of the facilities, resulted in undue prejudice. It is true that an extension of trackage rights, an enlarged common use of terminals, or the establishment of through routes and joint rates, or the withdrawal of any of them, could not be ordered except upon the findings and conditions prescribed in the act. But the order complained of does not require any such thing. It requires only that the carriers shall desist from a practice which involves such use as has resulted and will result in the undue prejudice found. The order leaves them free to remove the discrimination by any appropriate action. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515, 521. To accomplish this, it is not necessary that the Pennsylvania should grant to the other carriers the extensive use of the terminal facilities and tracks

which was sought,[5] and which the Commission found was not shown to be in the public interest. Compare *Pennsylvania Co.* v. *United States*, 236 U. S. 351 368; *Louisville & Nashville R. R. Co.* v. *United States*, 238 U. S. 1, 20. The situation in this case is unlike that which was presented in *Louisville & Nashville R. R. Co.* v. *United States*, 242 U. S. 60.

*Reversed.*

1. A judgment of a state Supreme Court denying an application for a writ of prohibition to prevent a lower court from entertaining jurisdiction by garnishment over an action against a foreign railroad corporation for damage to an interstate shipment, *held* a final judgment, and reviewable in this Court by certiorari, but not by writ of error. P. 206.

2. A Delaware corporation, having a usual place of business in Missouri, brought an action in a Missouri court against a Texas corporation which operated a railroad in Texas only and had no place of business, nor had consented to be sued, in Missouri, the cause of action being damage, done possibly in Missouri, to freight shipped to that State from Texas, over defendant's line, on a through bill of lading, and the basis of jurisdiction in Missouri

[5] The proceeding before the Commission, which was instituted by the Manufacturers Association of York, sought an order requiring the three railroads: (a) to interchange at York all traffic originating in or destined to that city; (b) to permit common use by all the carriers of all terminal facilities at York, including the main-line tracks for a reasonable distance outside the terminals; and (c) to establish reciprocal switching throughout the city.