### ATCHISON, T. & S. F. RY. CO. et al. v. UNITED STATES et al.

District Court, S. D. New York.
Oct. 30, 1934.

826

Silas H. Strawn, Ralph M. Shaw, E. A. Boyd, P. F. Gault, Walter McFarland, J. N. Davis, Wallace Hughes, D. P. Connell, and James Stillwell, all of Chicago, Ill., L. H. Strasser, of St. Louis, Mo., and Frank H. Towner, of Chicago, Ill., for petitioners.

J. Stanley Payne, Asst. Chief Counsel Interstate Commerce Commission, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, of Washington, D. C., of counsel), for defendant Interstate Commerce Commission.

Hornblower, Miller, Miller & Boston, of New York City (Nathan L. Miller, Harold J. Gallagher, and Edward M. Boyne, all of New York City, of counsel), for intervener Hygrade Food Products Corporation.

Charles E. Cotterill, of New York City, and Luther M. Walter, of Chicago, Ill. (Mark W. Potter, of New York City, of counsel), for intervener Union Stock Yard & Transit Company of Chicago.

Before MANTON, Circuit Judge, and KNOX and GODDARD, District Judges, composing a court convened pursuant to section 380, title 28, of the United States Code (28 USCA § 380).

MANTON, Circuit Judge.

The suit is brought under the Urgent Deficiencies Appropriation Act to set aside an order of the Interstate Commerce Commission which was made on application of the Hygrade Food Products Corporation, an intervener herein. The complainants were ordered to cease and desist from practices which subjected the Hygrade Food Products Corporation to the payment of yardage charges on live stock consigned to it at the Union Stockyards in Chicago, in instances where delivery is taken at unloading pens provided for such purpose. The order of the commission does not apply to live stock, delivery of which is taken at holding pens, as distinguished from unloading pens. The intervener Hygrade Food Products Corporation operates a packing plant adjacent to the Union Stockyards and purchases much of its live stock from points outside of Illinois. Shipments of this live stock are carried into the yards under an arrangement between the yards company and the railroads. The cars are placed at unloading platforms of the yards company which performs the unloading service for the railroads at the latter's expense. The animals are taken from the cars into unloading pens, and, if the consignees are not there at the time of the unloading, they are removed almost immediately into holding pens where there are facilities for feeding, watering, and otherwise caring for them. If the consignees

are present at the time of unloading, they take delivery of the stock at the unloading pens. Whether the consignees take delivery of the live stock at the unloading pens or at the holding pens, they have been subjected to certain yardage charges made by the yards company, and this has been so whether the holding pens service is given to the live stock or otherwise.

The Hygrade Corporation did not object to yardage charges where delivery was taken at the holding pens since actual service was rendered, but has succeeded before the commission in avoiding such charges where delivery is taken at unloading pens.

The Interstate Commerce Commission found the yards company to be a live stock terminal for the line haul carriers bringing live stock to Chicago, and that consignees were entitled under section 15 (5) of the Interstate Commerce Act, as amended (41 Stat. 456, 484, U. S. C. title 49 § 15 (5), 49 USCA § 15 (5), to delivery at pens, suitable for proper delivery, without charge, and that the mere placement therein of live stock constituted no assessable service rendered by the yards company.

The decision of the commission also provides that a charge may rightfully be made by the yards company if delivery at the unloading pens is not taken within a reasonable time, which time, due to the peculiar nature of the business, may be but a matter of minutes. The order is directed against the line haul carriers and the yards company and it is they who ask relief in this suit.

■■ It is argued by the complainants that the commission was without jurisdiction to make the order, but the commission has answered that sections 1 (6) and 15 (1) of the Interstate Commerce Act, as amended (41 Stat. 456, U. S. Code, title 49 [49 USCA §§ 1 (6), 15 (1)]), vest jurisdiction in it. Section 1 (6) declares that all common carriers subject to its provisions shall "establish, observe, and enforce * * * just and reasonable * * * practices affecting * * * rates * * * the manner and method of * * * delivering property for transportation * * * and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property * * * and every unjust and unreasonable * * * practice is prohibited." Section 15 (1) provides for the enforcement of the provisions of section 1 (6) and that if after a full hearing the Interstate Commerce Commission believes any practice to be unjust or unreasonable, it shall order the carrier or carriers to cease violations thereof and con-

form to a practice prescribed by the Interstate Commerce Commission as just and reasonable. Matters concerning rates may constitute an unjust practice. Adams v. Mills, 286 U. S. 397, 52 S. Ct. 589, 76 L. Ed. 1184.

It is also said that the order is uncertain and indefinite and therefore void because (a) it does not state what is a reasonable time within which the intervener must accept delivery in order to be relieved of the payment of the yardage charges; (b) it does not state whether the yards company is or is not a common carrier, and (c) it does not state what shall become of the yardage charges after the complainants and the yards company are required to cease the practice whereby they have imposed such charges upon the Hygrade Corporation. Also, it is argued, that the order attacked herein was not made in a practice case, as so treated by the commission, but a rate case, and that the order of the commission is therefore void in that it does not determine that the present rates on live stock carriage are adequate to enable the complainants to absorb the yardage charges of the yards company.

■ Lawful yardage charges, such as those involved in keeping the animals in holding pens, may well be a matter under the jurisdiction of the Secretary of Agriculture by virtue of the Packers and Stockyards Act (42 Stat. 159, U. S. C. title 7 § 181 et seq. [7 USCA § 181 et seq.), and not under the cognizance of the Interstate Commerce Commission. But section 226 (7 USCA), section 406 of the Packers Act, states that "nothing in this chapter shall affect the power or jurisdiction of the Interstate Commerce Commission, nor confer upon the Secretary (of Agriculture) concurrent power or jurisdiction over any matter within the power or jurisdiction of such commission." It is thus apparent that if the jurisdiction of the Interstate Commerce Commission is established, jurisdiction of the Secretary of Agriculture must give way thereto.

The Interstate Commerce Commission, by virtue of sections 13 (1) and 15 (1) of the Interstate Commerce Act, as amended, 49 USCA §§ 13 (1), 15 (1), has been given jurisdiction over unreasonable practices of carriers engaged in interstate transportation. This has application to the order entered herein, for the movement of live stock into unloading pens constitutes a part of their transportation; it is but the delivery of the consignee's shipment. Section 1 (3), 49 USCA § 1 (3), defines "transportation" as "all services in connection with the receipt, delivery, * * * storage, and handling of property transported."

■ It is said that the reasonable time within which the consignee must accept delivery of live stock consigned to it, to avoid the imposition of the yardage charges, is so indefinite as to render the order void. What constitutes a reasonable time varies with the volume of live stock received; whether the run was light or heavy. The general manager and vice president of the yards company stated that in the ordinary course of delivery animals are taken at the unloading pens, but that if this is to be done, it must be done almost simultaneously with the unloading of animals into the pens. The immediate removal of the animals from the unloading pens is absolutely necessary in order to preserve an even flow of live stock from cars into the yards. Moreover, he said, when questioned as to whether the animals ever remain longer in the unloading pens, that they did during the night, and that when the last train comes in they remain some time in these pens; they might remain for four or five hours, but it was not usual.

■ The order is not indefinite in determining whether the yards company is a common carrier. Heretofore the yards company was held to be a common carrier. United States v. Union Stock Yard & Transit Co., 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226. It was not essential to make such a finding here to support the order granted. The commission found that the yards company was the live stock terminal for all the complaining carriers. The yards company provided for the carriers the means of making deliveries of live stock to the consignees at this public yard. But this delivery was a part of the transportation and of the duty of the carrier. Covington Stock-Yards Co. v. Keith, 139 U. S. 128, 11 S. Ct. 461, 35 L. Ed. 73; Adams v. Mills, 286 U. S. 397, 52 S. Ct. 589, 76 L. Ed. 1184.

■■ It is also said that the order is erroneous because it fails to declare what should be done with, or take the place of, the charges made against the Hygrade Company with respect to the live stock consigned to it in Chicago. This was left to the discretion of the carriers, and the yards company, to be disposed of by some agreement among them with respect to the amount to be paid by the complainants to the yards company for the performance of this delivery service which is part of the duty of through transportation to be performed by the carriers. If the parties do not agree, a proceeding under paragraph 6 of section 15 of the Interstate Commerce Act, as amended (49 USCA § 15 (6), might be instituted for the purpose of establishing just, reasonable, and equitable divisions of rates. If the present rates are inadequate, they may be raised in a suitable rate case brought before the commission. The question here is not the reasonableness of the charges but the unfairness of the practice generally pursued in collecting this extra charge for delivery. Adams v. Mills, 286 U. S. 397, 52 S. Ct. 589, 592, 76 L. Ed. 1184; United States v. Pa. R. R., 266 U. S. 191, 45 S. Ct. 43, 69 L. Ed. 243; Chicago, I. & L. R. Co. v. United States, 270 U. S. 287, 46 S. Ct. 226, 70 L. Ed. 590.

■ After the yards company was declared a common carrier, in United States v. Union Stock Yard & Transit Co., 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226, it made changes in the terms of its leases, but whether or not it changed its position as a common carrier we need not determine now, for it, in the performance of this duty, rendered transportation services. United States v. Brooklyn Eastern Dist. Terminal, 249 U. S. 296, 39 S. Ct. 283, 63 L. Ed. 613, 6 A. L. R. 527. To be sure, it performed yardage services when it supplied holding pens, where care and attention to the animals were made possible, such as feeding, watering, and bedding.

But it is also true that the live stock moved over the rails owned by the yards company, though subleased to the Chicago & Indiana Railway Company, under a through route; and the commission has found that, in *Chicago, this is the only practical method* of taking care of the volume of live stock traffic which moves to and from that city every day. When live stock is placed by the line haul carriers at the unloading platforms *of the yards company, it is unloaded by em*ployees of the yards company, who inform the consignees of its arrival. The yards company furnishes weights on which the railways base their freight charges and collects such *charges from the consignees on account of the* carriers and remits them to the carriers. As stated in Adams v. Mills, supra, "the yards are, in effect, terminals of the railroads."

The yards company might well have been found to be a common carrier even though it be but an agent of the complainants in the performance of their transportation service. United States v. Brooklyn Eastern Dist. Terminal, supra; Adams v. Mills, supra. That the carriers employ the yards of the yards company and the services of their employees in effecting delivery of live stock as part of their transportation service admits of no doubt. The evidence is clear that these yardage charges are imposed, collected, and retained by the yards company and are for serv-

ices rendered to the complainants in the performance of their transportation duties. It is proper that the order of the commission should be directed against the yards company. It was an unlawful practice for the yards company, as well as the complainants, to thus assess and make charges in addition to the prescribed transportation rates. They were indulging in a practice condemned by the commission and the joint order against them is proper. North Penna. R. R. v. Commercial Nat. Bank, 123 U. S. 727, 734, 8 S. Ct. 266, 31 L. Ed. 287; Covington Stock-Yards Co. v. Keith, supra.

Congress recognized this duty when it legislated as to the jurisdiction of the Interstate Commerce Commission (Act of Feb. 4, 1887, c. 104, § 1, 24 Stat. 379; Act of June 29, 1906, c. 3591, 34 Stat. 584; Act of Feb. 28, 1920, c. 91, § 400, 41 Stat. 474 [49 USCA § 1]), and it was the intention of Congress to so regulate commerce as to place the regulation of all the services performed by common carriers by rail in the transportation of property with the Interstate Commerce Commission. Cleveland, C., C. & St. L. Ry. Co. v. Dettlebach, 239 U. S. 592, 36 S. Ct. 177, 60 L. Ed. 453.

Complainants contend that section 15 (5) of the present act to regulate commerce limits their duty with respect to live stock delivered at public stockyards, and they say that under this section their transportation duty ends when they have unloaded the live stock at suitable pens in the public stockyard. Section 15 (5) expressly provides that the transportation of live stock shall include the service of unloading the live stock into suitable pens at the public stockyard. This is the same language with which the term "railroad" and the term "transportation" are defined in paragraph 3 of section 1 of the Act (49 USCA § 1 (3), where it is provided that these terms shall "include" various services and facilities therein mentioned.

Complainants argue that this is a rate case, and the order entered reduces rates without making an appropriate finding as to their adequacy. What was before the commission was a practice violation not a rate controversy. Los Angeles Switching Case (Interstate Commerce Com. v. A., T. & S. F. R. Co.), 234 U. S. 294, 34 S. Ct. 814, 58 L. Ed. 1319. It was not a contest between carriers as to who shall bear the expense entailed in delivering live stock to the Hygrade Company. As said in Adams v. Mills, supra, "the reasonableness of the charge itself, and the complementary question whether the railroads should be required to absorb it, were in no way involved before the Commission; and that tribunal properly made no finding with respect thereto."

We think the commission properly ruled that section 15 (5) of the Act to regulate commerce did not limit its jurisdiction over terminals and terminal facilities of the line haul carriers, and that its jurisdiction extended as provided for in paragraph 3, section 1 of the Act.

The suit is dismissed.