**ARON et al. v. PENNSYLVANIA R. CO.**

No. 6057.

District Court, E. D. New York.

April 30, 1935.

Vollmer & Wildermuth, of Brooklyn, N. Y. (Henry Vollmer, Jr., Geo. C. Wildermuth, and Robert J. Dixson, all of Brooklyn, N. Y., of counsel), for plaintiffs.

Platt & Walker, of New York City (Guernsey Orcutt, of Pittsburgh, Pa., and Roswell P. C. May and Dennis P. Donovan, both of New York City, of counsel), for defendant.

BYERS, District Judge.

This is an action at law by several plaintiffs resident in this district, who seek to recover from the defendant, a corporation of Pennsylvania, allegedly unlawful freight charges paid by the plaintiffs as consignees of several interstate shipments of live stock or cattle.

The points of origin of these shipments were so remote from the destination (Jersey City) that, in compliance with the so-called 28 hour law, the carrier was required to unload the cattle and live stock at Pittsburgh for the 5 hour period therein stated, for rest, water, and feeding.

The objectionable imposts were "service charges" in connection with that operation, paid by the carrier to the "Pittsburgh Union Stock Yards Co." and its successor, "Pittsburgh Joint Stock Yards Co.," a private or non-railroad operated stock-yard. The charges so paid were included in the waybills of the respective shipments and collected by the carrier from the plaintiffs.

A jury was waived and the case was submitted to the court for determination, there being no controverted issues of fact respecting the status of the parties, or the amounts of the charges. The bases of the plaintiffs' claims are set forth in the stipulation upon which the cause was submitted.

The said "service charges" were $1.00 for single, and $2.00 for double, deck cars, and the nature of the services will be explained in detail presently.

The statute imposing the duty of resting, watering and feeding cattle and live stock in transit is found in title 45, U. S. C., §§ 71 and 72 (45 USCA §§ 71, 72), which seems not to require quotation; the latter section says that the duty of feeding and watering the animals rests upon the owner or person having custody thereof; and, in case of his default, the duty rests upon the carrier, at the reasonable expense of the owner; in that event, the carrier has a lien upon the animals for food, care and custody furnished, collectible at destination.

In this connection, the following is included from the stipulation of facts:

"The said shipments of ordinary live stock were billed from the points of origin through to destinations and without any instructions, written or oral, to the carriers as to the watering, feeding or resting in transit, and were not accompanied by attendants or caretakers. After the shipments were stopped en route at said public stock yards, said shipments were removed from the cars into the said public stock yards, and after a period of time were reloaded into the cars. During the intervening period of time the shipments were in the said public stock yards, but the plaintiffs do not concede that the shipments left the legal possession of the defendant. Upon such stopping neither the plaintiffs nor the owners of said live stock or any employees of either undertook to provide feed and water therefor and during said period feed, water and care were furnished."

Under the foregoing circumstances, the plaintiffs paid to the carrier the service

charges, as a separate item in each instance, and also the charge for feed; as to the latter, there is no attempt to recover.

The plaintiffs' cause is based upon the Interstate Commerce Act, §§ 8, 9, 16 (title 49 U. S. C. §§ 8, 9 and 16 [49 USCA §§ 8, 9, 16]). The first provides substantially that, if a carrier shall violate any provision of the act, it shall be liable to the person injured "for the full amount of damages sustained in consequence of any such violation * *" together with a reasonable attorney's fee to be fixed by the court if recovery be had. The second is to the effect that the remedy may be sought either by complaint made to the Interstate Commerce Commission, or in any district court of the United States of competent jurisdiction, but both remedies may not be had, i. e., there must be an election.

The third section contains provisions touching orders by the commission, and proceedings to enforce them; limitation of actions (not here involved) and many procedural paragraphs.

■ The principal contention of the plaintiffs has to do with the failure of the carrier to include in its tariff filed with the Commission the amount of the charges which would be made for such service, in connection with stops at non-railroad operated stock-yards.

The reference, in the tariff as filed, to such matters was in the following form:

"Stops In Transit At Other Than Railroad Operated Stock Yards. * * *

"Ordinary Live Stock. When ordinary Live Stock, as defined in Item 3 hereof, in carloads, in transit is stopped en route at other than railroad operated stock yards for feed, water and rest, in compliance with Federal or State laws, the actual charges made by such stock yards for unloading and reloading will be paid by the carrier to the stock yards company. [Note: This is in compliance with section 15, subd. 5, of the Interstate Commerce Act, 49 USCA § 15, subd. 5.] The charges of stock yards company for the feed [Note: No recovery is sought by the plaintiffs for the item of feed.] and service rendered, other than unloading and reloading, will be assessed against the shipment and may be paid by the attendant in charge or, if not so paid, must be entered on the waybill as 'Feed and Service (other than unloading and reloading) Charges' * * *."

If the said service charge was a charge "for transportation," it should have been stated in terms in the tariff filed with the Commission in compliance with paragraph (6) of the act which provides in part (title 49 U. S. C. § 6, 49 USCA § 6):

"§ 6. *Schedules and statements of rates, etc.* * * * (1) *Schedule of rates, fares, and charges; filing and posting.* Every common carrier subject to the provisions of this chapter shall file with the commission created by this chapter and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route * * *."

Issue is made between the parties as to whether this service is properly to be defined as "transportation." This is what is done: The cattle and live stock are unloaded from the cars into pens which are not equipped for feeding, watering and resting the animals.

Thus the carrier discharges its duty to unload. From those pens, the cattle are driven to others equipped for feeding, watering and resting. The driving of the cattle, the care and maintenance of the latter pens, and the return of the cattle to the reloading pens, comprise the basis for the service charge. The maintenance of quarters wherein the owner's duty may be performed to feed, water and rest the animals involves expense, and obviously that expense must be compensated.

If that expense is so connected with transportation as to form a part of it, then the amount should be stated in the tariff, and the failure in that respect constitutes a violation of the law.

The Interstate Commerce Commission has determined that such is the nature of the charge. See Strauss & Adler v. New York Central R. R. Co., 153 I. C. C. 609. That case involved the precise question here involved, concerning this yard and the failure of this defendant so to publish its tariff. The major controversy had to do with the jurisdiction of the Commission, because the carriers urged that no "charge for transportation" was involved in the so-called "service charge." In a carefully reasoned opinion in which it appears that these contentions were examined with great care, the conclusion was announced that the exactions are properly to be designated as a "charge for transportation" and that jurisdiction did pertain to the Commission.

So much of the decision is criticised by the defendant, in that, if the owner of the animals is not on hand to perform his duties—in person or by agent—one who does so function acts for the owner. If the Commission's views are understood, the answer to this is that the primary duty is that of the owner, but, by statute, the secondary duty is that of the carrier as such; in that capacity it acts as the alternate of the owner, rather than as agent for him.

In any case the views of the Commission are so informed as to command ready acquiescence, and the decision will be followed.

Thus far then the plaintiffs are in a position to seek recovery of damages, by reason of the failure of the defendant to include in its tariff as filed the amount of the "service charges."

■ They then rest under the necessity of proving the extent of the injury which they have suffered. See Knudsen-Ferguson Fruit Co. v. Michigan Cent. R. Co. (C. C. A.) 148 F. 968, 974 (Certiorari denied 204 U. S. 671, 27 S. Ct. 786, 51 L. Ed. 672):

This was a suit to recover $27.00 charged for icing a car load of grapes and $500.00 attorney's fee, the shipment having been interstate. There was nothing, in the tariff as filed, covering such an item, which was alleged to be unreasonable. A judgment for defendant was affirmed on appeal.

The Eighth Circuit Court of Appeals said that the schedules as filed clearly showed that the transportation charge did not include the icing charge, and that there was no proof at the trial that the charge was unreasonable. After discussing prior cases, and quoting section 8 of the act, the court used the following language:

"To support a recovery under this section, there must be a showing of some specific pecuniary injury. A cause of action does not necessarily arise from those acts or omissions of a common carrier that may subject it to a criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the commission. It is not every imperfect or inaccurate specification of rates in the schedules that will give to a shipper a cause of action for damages. He must show, either that there has been some unreasonable or excessive charge imposed, or some unlawful discrimination practiced against him. The plaintiff here, having founded his cause of action upon a technical construction of the law, and without the basis of any ruling or order of the commission, seeks to recover without proof of pecuniary damage. The schedules of rates filed with the commission clearly showed that there was a charge for icing, and that it was not included in or absorbed by the ordinary second-class rate from Matawan, Mich., to Duluth, Minn. * * * The record before us discloses no finding and ruling of the commission against the reasonableness of the rates, and there was no proof upon the subject. There was no proof that what the plaintiff actually paid was in excess of a reasonable compensation for the services performed, whether considered separately or in the aggregate; nor does it appear that any discrimination of any kind or character was practiced against it. In the absence of a showing of injury or damage, there can be no recovery."

A portion of the foregoing was quoted with approval by the Supreme Court in Pennsylvania R. Co. v. International Coal Min. Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315.

The latter case was examined in I. C. C. v. U. S., 289 U. S. 385, 53 S. Ct. 607, 77 L. Ed. 1273, in which there had been a finding of a discriminating rate, and the opinion says (289 U. S. 385, page 390, 53 S. Ct. 607, 610, 77 L. Ed. 1273) in referring to the shipper: "He is to recover the damages that he has suffered, which may be more than the preference or less (Penn. R. Co. v. International Coal Co., supra, 230 U. S. 184, pages 206, 207, 33 S. Ct. 893 [57 L. Ed. 1446, Ann. Cas. 1915A, 315]), but which, whether more or less, is something to be proved and not presumed. Id., 230 U. S. 184, page 204, 33 S. Ct. 893 [57 L. Ed. 1446, Ann. Cas. 1915A, 315]. * * *".

Thus it is clear that the plaintiffs' cause is at best a theoretical concept until the element of damage has been demonstrated.

It is now necessary to turn to the latest aspect of the Strauss & Adler v. New York Central R. R. Co. controversy, reported in 188 I. C. C. 487, 489, decided October 11, 1932. There was a further hearing upon the same complaint, for the purpose of determining whether the "service charge" as stated was reasonable. Apparently the Commission examined into the costs of operation of the stock-yards, as though the corporation rendering the service had been a carrier, for the reason that the charge had been exacted by the railroads from the consignee. Cf. Atchison, T. & S. F. Ry. Co. v. U. S. (D. C.) 8 F. Supp. 825.

The opinion discloses a careful analysis of the costs of operation, and that by a divid-

ed commission the conclusion was reached that the charges so collected were not unreasonable, and hence the complaints were dismissed.

. The defendant relies upon that finding, and the plaintiffs assert that it is not binding upon them or this court.

The court is told that the plaintiffs are entitled to recover the full amount of the overcharges paid, but there is nothing in the statute which speaks of "damages" or in the cases cited in behalf of the argument, which sustains such a theory.

For instance, in L. & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, on page 235, 46 S. Ct. 73, 79, 70 L. Ed. 242, it is said: "The carrier concedes, as it must under Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451, that a recovery for excessive freight charges can be had under section 1 [49 USCA § 1] without specific proof of pecuniary loss, and that the measure of damages is the amount of the excess exacted." This language has to do with the incidence of damage, that is, whether, under the contract presented, the loss was borne by the shipper or the consignee. That also was the point decided in the cited case, where a verdict for plaintiff which had been sustained on appeal was the basis of the judgment which was affirmed. The Commission in the first instance had ordered reparation of the amount by which a given rate had been found to be excessive.

It seems unnecessary to dwell upon what must be obvious, namely, that the plaintiffs are entitled to recover only the amount of their actual damage, which is the difference between what they have paid, and such reasonable charge as they should have paid. See Memphis Freight Bureau v. Kansas City So. R., 17 I. C. C. 90. This is equivalent to saying that, according to the findings of the Commission as last above stated, the plaintiffs have suffered no actual damage.

■ While the status to be assigned to that finding, in this cause, is the subject of controversy, it presents no practical difficulty.

The parties are confronted by a decision of the Commission having a dual aspect, first, that the "service charge" is a cost of transportation and should be published in the tariff, and, second, that the amount of such charge as was imposed was not unreasonable.

It is not easy to perceive how this aspect of affairs differs in principle from what was before the Supreme Court in Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. There a state court had sustained a recovery by a shipper against the carrier, in the assertion of a common law right to recover damages based upon the imposition of an alleged unreasonable rate for interstate carriage. The tariff filed by the defendant with the Commission set forth the objectionable charge, and there had been no finding by that body that the rate was unreasonable or otherwise offensive to the law.

The judgment was reversed and the basis of the decision was that uniformity of administration and the plain requirements of the law pointed inevitably to the necessity, on the part of the shipper, to first have recourse to the Commission for relief, before seeking redress in the courts.

That decision was expounded in Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285 [42 S. Ct. 477, 66 L. Ed. 943] in an opinion which distinguished cases involving matters of law touching the rights and responsibilities arising from matters of construction of the statute (in which primary resort may be had to the courts) and those pertaining to issues of fact, such as the reasonableness of rates. The language is (259 U. S. 285, page 291, 42 S. Ct. 477, 479, 66 L. Ed. 943) : "To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases. It is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission."

Again, in Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U. S. 654, 51 S. Ct. 592, 75 L. Ed. 1333, where reparation, because of the collection of excessive freight charges, had been ordered by the Commission, and not made, with the result that a state court suit was instituted to recover damages, the court said (283 U. S. 654, page 661, 51 S. Ct. 592, 595, 75 L. Ed. 1333) : "But no action for damages alleged to have been caused by the exaction of excessive rates for interstate transportation can be maintained in any court, state or federal, in the absence of a prior finding by the Commission that the rate charged was unreasonable. The

reasons upon which this rule rests have been fully stated in our decisions." (Citing cases, among which are those hereinabove referred to.)

Since these plaintiffs have not followed the teaching of these cases, they cannot here prevail.

It is said for the defendant that the finding of reasonableness is one with which the court has no concern. Such a remark indeed was made in the course of the opinion in Virginian Ry. Co. v. U. S., 272 U. S. 658, 47 S. Ct. 222, 71 L. Ed. 463, wherein the court stated, in a connection not presently applicable, that there was substantial evidence to support a finding that certain rates were unreasonable, and the decision was against the carrier.

The conclusion upon which the decision of the present controversy is based is that the consignee has not had primary resort to the commission to seek its ruling upon the question of fact which must be established (namely, the reasonableness of the transportation cost called the "service charge") as a prerequisite to a showing of damage.

The excuse for not doing this is apparent, because the Commission has already found that the charge is reasonable.

But that does not suffice as a reason why this court should seek to reach an independent conclusion upon a subject which lies within the special jurisdiction of the Commission, whose function under the law is to decide such matters.

There is substantial reason for holding that the court would be precluded from conducting such an inquiry: In A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 236 U. S. 662, 35 S. Ct. 444, 445, 59 L. Ed. 774, it is said that a shipper who was not a party to a proceeding before the Commission in which a certain rate was found to be unreasonable "was entitled by appropriate proceedings before the Commission or the courts to obtain the benefit of that general finding and order," hence its declaration in that behalf was upheld.

It would be a strange process of reasoning which would deny to a carrier, who was a party to the proceeding, an equal resort to its protection.

Moreover, it has been said that a finding by the Commission on the subject of reasonableness of rates has the effect of an Act of Congress. See National Pole Co. v. Chicago & Northwestern Ry. Co. (C. C. A.)

211 F. 65, and cases in which it has been cited with approval.

It results from the foregoing considerations, that judgment must be awarded to the defendant, with costs.